## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WEBSTER BANK, NATIONAL ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | FILED STAMP: JULY 9, 2008 |
| v. | ) ) | 08CV3900 |
| | ) | JUDGE ST. EVE |
| STEFAN JAKUBIK, | ) ) | MAG. JUDGE SCHENKIER |
| Defendant. | ) ) | J. N. |

### COMPLAINT

Plaintiff, Webster Bank, National Association, by and through its attorneys, hereby complains against Stefan Jakubik for breach of contract and fraud, and in support states the following:

### JURISDICTION

1.      This Court has subject matter jurisdiction over this subject matter under 28 U.S.C. §1332 and 28 U.S.C. § 1348. This is a civil action between citizens of different states. The amount in controversy in this action exceeds $75,000.00 exclusive of costs and interest.

2.      Venue is properly before this Court pursuant to 28 U.S.C. §1391(a)(1) and (a)(3) because Defendant Stefan Jakubik ("Jakubik") resides within the district and is subject to personal jurisdiction here.

### THE PARTIES

- 1 -

3.    Plaintiff, Webster Bank, National Association ("Webster"), is a national banking association, chartered pursuant to 12 U.S.C. § 21, et seq.; its articles of association designate Waterbury, Connecticut as the locus of its main office.

4.    Defendant Jakubik is a resident of Cook County, Illinois and a citizen of the state of Illinois.

## THE FACTS

5.    Jakubik applied for a mortgage to be secured by property at 3816 Johnson Avenue, Western Springs, IL, 60558 (the "Property").   In his application (loan application "Application" attached hereto as Exhibit A), Jakubik indicated that the property would be his primary residence.

6.    Webster relied on Jakubik's statement in the Application that the construction property would be his primary residence in deciding to make a loan to Jakubik.

7.    At the time Jakubik signed the Application, he intended to build the house for re-sale, not as his primary residence.

8.    On February 2, 2007, Webster and Jakubik entered into a loan agreement evidenced by a written promissory note (02/02/07 promissory note, the "Note," attached hereto as Exhibit B).

9.    Under the terms of the Note, Webster agreed to loan Jakubik the principal amount of $880,000.00 at a yearly interest rate of 9.1250%.  Ex. B, Note, ¶ 2.  The loan was for the purpose of construction of the Property and Webster funded the loan pursuant to the agreement.

10.    Pursuant to the Note, on April 1, 2007, Jakubik was to begin making monthly payments of $7,159.97. These payments were to continue until Jakubik had "paid all of the

principal and interest and any other charges described below that [Jakubik] may owe under [the] Note." Ex. B, Note, ¶ 3.

11.     The monthly payment amount was amended by the Construction Rider to Note and Security Instrument (the "Rider," attached hereto as Exhibit C), which provided that until March 1, 2008, Jakubik could make interest only payments. See Ex. C, Rider ¶ 4. The Rider also provided that as of March 1, 2008, Jakubik would begin making payments of both principal and interest in the amount of $7,203.79. Ex. C, Rider, ¶ 4.

12.     Jakubik began making the scheduled payments.   However, on February 1, 2008, Jakubik failed to make the scheduled payment and has not since made a single payment to Webster.

13.     The Note provides that if Webster "has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, [Jakubik] will pay a late charge," of "5.000 % of [the] overdue payment of principal and interest." Ex. B, Note, ¶ 6(A).

14.     The Note provides that if a payment is not made on the date it is due, Jakubik will be in default. Ex. B, Note, ¶ 6(B).

15.     Therefore, Jakubik is currently in default.

16.     On April 23, 2008, pursuant to the terms of the Note and related contracts, Webster sent Jakubik a notice of default; the full amount of principal and interest is now due and payable. Ex. B, Note, ¶ 6(c).

## COUNT ONE – Breach of Contract

17.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 16 above as if fully set forth herein.

18.     Webster offered to loan Jakubik the sum of $880,000.00 on the terms described in the Note and related contracts.

19.     Jakubik accepted the terms of the Note and related contracts

20.     The consideration for the Note consisted of Webster's payment of the principal and Jakubik's agreement to repay the loan with interest.

21.     The parties memorialized their agreement on February 2, 2007 by executing the Note, thus creating a valid and enforceable contract.

22.     By funding the loan, Webster fully performed.

23.     Jakubik began performance by making monthly payments.

24.     Jakubik stopped making monthly payments, is now in default and thereby breached the contract.

25.     Pursuant to the terms of the Note and related contracts, the entire sum of principal and interest is now due and payable.

26.     The terms of the Note provide that Jakubik agreed to pay any expenses Webster incurred in enforcing the provisions of the Note, including attorney's fees. Ex. B, Note, ¶ 6(E).

27.     As of the date of filing, the amount of principal, interest, and expenses due on the Note exceeded $841,830.27.

**WHEREFORE**, plaintiff Webster respectfully requests that this Court enter judgment in Webster's favor and against Jakubik in an amount to be proved at trial including interest, attorney's fees, costs, expenses believed to be in excess of $841,830.27 and order any other relief the Court deems equitable and just under the circumstances.

## COUNT TWO – Fraud

28.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 27 above as if fully set forth herein.

29.    Jakubik made a misstatement of fact when he indicated in the Application that the Property was to be his primary residence (the "Statement").

30.    At the time Jakubik made the Statement, he knew it to be false, as he intended to build the house for resale.

31.    Jakubik intended for Webster to rely on the Statement when making its determination regarding whether to offer Jakubik a loan.

32.    Webster did rely on the Statement in deciding to offer to lend Jakubik $888,000.00 under the terms described in the Note.

33.    As a result of Webster's reliance on the Statement, Webster has suffered losses, which as of the date of filing exceeded $841,830.27.

**WHEREFORE**, Plaintiff Webster respectfully requests that this Court enter judgment in Webster's favor and against Jakubik in an amount to be proved at trial including interest, attorney's fees, costs, expenses believed to be in excess of $841,830.27 and order any other relief the Court deems equitable and just under the circumstances.

Dated: July 9, 2008

Daniel Lynch (Ill. Bar No. 6202499)
Amy J. Hansen (Ill. Bar No. 6292957)
Lynch & Stern LLP
150 S. Wacker Dr., Suite 2600
Chicago, IL  60606
(312) 442-9480 / (312) 896-5883 (fax)

Respectfully submitted,
Webster Bank, National Association,


*s/ Daniel Lynch* (filed electronically)
By: One of Its Attorneys

- 5 -

# Exhibit A – Application

02/01/2007 12:37 FAX 203 271 7532     WEBSTER NCLC CLOSING     ☑ 011/033

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower" as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when □ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or □ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower

Co-Borrower

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA | ☒ Conventional | □ Other (explain): | Agency Case Number | Lender Case Number: 4704246801 |
|---|---|---|---|---|---|
| | FHA | □ USDA/Rural Housing Service | | | |

| Amount $ 880,000.00 | Interest Rate 9.1250 % | No. of Months 349 | Amortization Type: | ☒ Fixed Rate | □ Other (explain): |
| | | | | □ GPM | □ ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) 3816 JOHNSON AVENUE     WESTERN SPRINGS, IL 60558 | No. of Units 1 |
|---|---|
| Legal Description of Subject Property (attach description if necessary) | Year Built 2007 |

| Purpose of Loan | □ Purchase | □ Construction | □ Other (explain): | Property will be: | ☒ Primary Residence | □ Secondary Residence | □ Investment |
|---|---|---|---|---|---|---|---|
| | ☒ Refinance | □ Construction-Permanent | | | | | |

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements TO BE MADE | □ made □ to be made |
|---|---|---|---|---|---|
| | $ | $ | | Cost: $ | |

| Title will be held in what Name(s) STEFAN JARUBIK | Manner in which Title will be held A Single Man | Estate will be held in: ☒ Fee Simple □ Leasehold (show expiration date) |
|---|---|---|
| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) | | |

### III. BORROWER INFORMATION / Co-Borrower

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | STEFAN JARUBIK | Co-Borrower's Name (include Jr. or Sr. if applicable) |
| Social Security Number | Home Phone (incl. area code) 847-274-5244 | DOB (mm/dd/yyyy) 07/14/1951 | Yrs. School 14 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |

| ☒ Married □ Separated | Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 0 ages | □ Married □ Separated | Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own □ Rent 4 No. Yrs. 6451 N. KIMBAL AVENUE LINCOLNWOOD, IL 60712 | Present Address (street, city, state, ZIP) □ Own □ Rent No. Yrs. |
|---|---|
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) □ Own □ Rent No. Yrs. | Former Address (street, city, state, ZIP) □ Own □ Rent No. Yrs. |
|---|---|

### IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer | □ Self Employed | Yrs. on this job 10 | Name & Address of Employer | □ Self Employed | Yrs. on this job |
| KAMA CONSTRUCTION 8552 W. GREGORY STREET CHICAGO, IL 60656 | | Yrs. employed in this line of work/profession 25 | | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business CHIEF PROJECT EXECUTIV | Business Phone (incl. area code) 773-562-8160 | | Position/Title/Type of Business | Business Phone (incl. area code) | |

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer | □ Self Employed | Dates (from - to) | Name & Address of Employer | □ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer | □ Self Employed | Dates (from - to) | Name & Address of Employer | □ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05

VMP-21N (0507)
Page 1 of 4     Initials: _SJ_
VMP Mortgage Solutions, Inc. (800)521-7291

02/01/2007 12:38 FAX  203 271 7532        WEBSTER NCLC CLOSING                                    ☑012/033

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 30000 | $ | $ 30000 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 1,223.00 | $ 7,203.79 |
| Bonuses | | | | Other Financing (P&I) | 984.00 | |
| Commissions | | | | Hazard Insurance | 100.00 | 143.16 |
| Dividends/Interest | | | | Real Estate Taxes | 484.16 | 916.66 |
| Net Rental Income | 43 | | 43 | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $30,043.00 | $ | $ 30,043.00 | Total | $ 2,791.16 | $ 8,263.61 |

*Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**    Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.    Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| | | | Name and address of Company | $ Payment/Months | $ 351.00 |
| List checking and savings accounts below | | | WFNNB/EXPRES | 15.00 | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| US BANK | | | Acct. no. | | |
| | | | Name and address of Company | $ Payment/Months | $ 8,958.00 |
| | $ 15,467.00 | | BK OF AMER | 377.00 | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| FIFTH THIRD BAN | | | Acct. no. | | |
| | 260.00 | | Name and address of Company | $ Payment/Months | $ 12,378.00 |
| Acct. no. | $ 49,439.00 | | CHASE | 476.00 | |
| Name and address of Bank, S&L, or Credit Union | | | 5/26/07 | | |
| | | | Acct. no. | | |
| | | | Name and address of Company | $ Payment/Months | $ 5,100.00 |
| Acct. no. | | | THD/CBSD | 128.00 | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | Acct. no. | | |
| | | | Name and address of Company | $ Payment/Months | $ 6,675.00 |
| Acct. no. | | | 5/3 BANK CC | 193.00 | |
| Stocks & Bonds (Company name/number & description) | $ | | Acct. no. | | |
| | | | Name and address of Company | $ Payment/Months | $ 1,212.00 |
| Life insurance net cash value | $ | | MACY'S | 95.00 | |
| Face amount: $ | | | | | |
| Subtotal Liquid Assets | $ 65,166.00 | | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,160,000.00 | | Name and address of Company | $ Payment/Months | $ 24,794.00 |
| Vested interest in retirement fund | $ | | STATEFRM | 521.00 | |
| Net worth of business(es) owned (attach financial statement) | $ | | | | |
| Automobiles owned (make and year) | $ | | Acct. no. | | |
| PORSCHE- 91 | 22,000.00 | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | | Total Monthly Payments | $ 1,752.00 | |
| Total Assets a. | $ 1,247,166.00 | | Net Worth (a minus b) ▶ $ -225,958.19 | Total Liabilities b. | $ 1,473,124.19 |

4704246001

02/01/2007 12:38 FAX  203 271 7532    WEBSTER NCLC CLOSING    @013/033

## VI. ASSETS AND LIABILITIES (cont'd)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| **See Attached R.E. Schedule** Totals | | $ 1160000 | $ 1124463 | $ 1200 | $ 5193 | $ 150 | 43 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s).

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 884,134.19 |
| e. Estimated prepaid items | 1,718.00 |
| f. Estimated closing costs | 10,709.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 896,561.19 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | 175.00 |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 880,000.00 |
| n. PMI, MIP, Funding Fee financed | 880,000.00 |
| o. Loan amount (add m & n) | 880,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 16,386.19 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | Co-Borrower |
|---|---|---|
| a. Are there any outstanding judgments against you? | X | X |
| b. Have you been declared bankrupt within the past 7 years? | X | X |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | X | X |
| d. Are you a party to a lawsuit? | X | X |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | X | X |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | X | X |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | X | X |
| h. Is any part of the down payment borrowed? | X | X |
| i. Are you a co-maker or endorser on a note? | X | X |
| j. Are you a U.S. citizen? | X | X |
| k. Are you a permanent resident alien? | X | X |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | X |
| m. Have you had an ownership interest in a property in the last three years? | | |
| (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | PR | |
| (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 2/2/07 | X | 2/2/07 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| ☐ I do not wish to furnish this information. | | ☐ I do not wish to furnish this information. | |
| **Ethnicity:** ☐ Hispanic or Latino  ☒ Not Hispanic or Latino | | **Ethnicity:** ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | |
| **Race:** ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☒ White | | **Race:** ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | |
| **Sex:** ☐ Female  ☒ Male | | **Sex:** ☐ Female  ☐ Male | |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☒ Face-to-face interview  ☐ Mail  ☐ Telephone  ☐ Internet | Bancmart Mortgage Network, Inc. | Bancmart Mortgage Network, Inc. 7100 W. Addison Street Chicago, IL 60634 |
| | Interviewer's Signature  Tania Beerych  2/2/07 | |
| | Interviewer's Phone Number (incl. area code)  773-205-2323 | |

VMP-21N (0507)    Page 3 of 4

Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05

02/01/2007 12:39 FAX 203 271 7532    WEBSTER NCLC CLOSING    ☑ 014/033

## Continuation Sheet/Residential Loan Application

| | Borrower: | Agency Case Number: |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | **STEFAN JAKUBIK** | |
| | Co-Borrower: | Lender Case Number: **4704246801** |

**Borrower**                                                                 **CoBorrower**

*If residing at present address for less than two years, complete the following:*

| Former Address (street, city, state, ZIP) | ☐ Own | ☐ Rent | No. Yrs. | Former Address (street, city, state, ZIP) | ☐ Own | ☐ Rent | No. Yrs. |
|---|---|---|---|---|---|---|---|

*If employed in current position for less than two years, complete the following:*

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position / Title - Type of Business | Business Phone (incl. area code) | | Position / Title - Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position / Title - Type of Business | Business Phone (incl. area code) | | Position / Title - Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position / Title - Type of Business | Business Phone (incl. area code) | | Position / Title - Type of Business | Business Phone (incl. area code) | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 2.2.07 | X | |

Freddie Mac Form 65   07/05
Fannie Mae Form 1003 07/05

Page 4 of 4

12/03
2021N4

02/01/2007 12:39 FAX  203 271 7532     WEBSTER NCLC CLOSING     ☑ 015/033

**(Supplement to Residential Loan Application)**

Name  **STEFAN JAKUBIK**

The following information is provided to complete and become a part of the application for a mortgage in the amount of $     **880,000.00**

with interest at **9.1250** %, for a term of     **349**     months and to be secured by property known as:

Subject Property Address (street, city, state, & zip code)

**3816 JOHNSON AVENUE**
**WESTERN SPRINGS, IL  60558**

Legal Description of Subject Property (attach description if necessary)

**See Attached Legal Description**

## ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [K] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by ( * ) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | | LIABILITIES | $ Payt./Mos. | $ | $ |
| | | Name and address of Company | | | |
| **List checking and savings accounts below** | | **NICOR GAS** | | | |
| Name and address of Bank, S&L, or Credit Union | | | | 5.00 | |
| | | | | / | 93.00 |
| | | Acct. no. | | | |
| | | Name and address of Company | $ Payt./Mos. | $ | |
| Acct. no. | $ | **NICOR** | | | |
| Name and address of Bank, S&L, or Credit Union | | | | 2.00 | |
| | | | | / | 14.00 |
| | | Acct. no. | | | |
| | | Name and address of Company | $ Payt./Mos. | $ | |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | | / | |
| | | Acct. no. | | | |
| | | Name and address of Company | $ Payt./Mos. | $ | |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | | / | |
| | | Acct. no. | | | |
| Acct. no. | $ | Name and address of Company | $ Payt./Mos. | $ | |
| Stocks & Bonds (Company name/number & description) | $ | | | | |
| | | | | / | |
| | | Acct. no. | | | |
| | | Name and address of Company | $ Payt./Mos. | $ | |
| Life insurance net cash value | | | | | |
| Face amount: $ | $ | | | | |
| **Subtotal Liquid Assets** | $   **65,166.00** | | | / | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct. no. | | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payt./Mos. | $ | |
| Net worth of business(es) owned (attach financial statement(s)) | $ | | | | |
| Automobiles owned (make and year) | $ | | | / | |
| | | Acct. no. | | | |
| Other Assets (itemize) | $ | Alimony / Child Support / Separate Maintenance Payments, Job Related Expense (child Care, Union Dues, etc.) Owed to: | $ | | |
| | | | $ | | |
| | | Total Monthly Payments | $   **1,752.00** | | |
| **Total Assets a.** | $   **1,247,166.00** | Net Worth (a minus b) $ **-225,958.19** | Total Liabilities b. | $   **1,473,124.19** | |

Freddie Mac Form 65A/Rev. 5/91 (Amended)

Page 1 of 2

Fannie Mae Form 1003A/Rev. 5/91

4704246801

1003AP1

*S. J*

02/01/2007 12:40 FAX  203 271 7532     WEBSTER NCLC CLOSING                    ☑ 016/033

**ASSETS AND LIABILITIES (cont.)**

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▶ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |
| | | |

**ACKNOWLEDGMENT AND AGREEMENT**

The undersigned specifically acknowledge(s) and agree(s) that: (1) the loan requested by this application will be secured by a first mortgage or deed of trust on the property described herein; (2) the property will not be used for any illegal or prohibited purpose or use; (3) all statements made in this application are made for the purpose of obtaining the loan indicated herein; (4) occupation of the property will be as indicated above; (5) verification or reverification of any information contained in the application may be made at any time by the Lender, its agents, successors and assigns, either directly or through a credit reporting agency, from any source named in this application, and the original copy of this application will be retained by the Lender, even if the loan is not approved; (6) the Lender, its agents, successors and assigns will rely on the information contained in the application and I/we have a continuing obligation to amend and/or supplement the information provided in this application if any of the material facts which I/we have represented herein should change prior to closing; (7) in the event my/our payments on the loan indicated in this application become delinquent, the Lender, its agents, successors and assigns, may, in addition to all their other rights and remedies, report my/our name(s) and account information to a credit reporting agency; (8) ownership of the loan may be transferred to successor or assign of the Lender without notice to me and/or the administration of the loan account may be transferred to an agent, successor or assign of the Lender with prior notice to me; (9) the Lender, its agents, successors and assigns make no representations or warranties, express or implied, to the Borrower(s) regarding the property, the condition of the property, or the value of the property.
Certifications: I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 2/2/07 | X | 2/2/07 |

**TO BE COMPLETED BY INTERVIEWER**

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Bancmart Mortgage Network, Inc. | Bancmart Mortgage Network, Inc. |
| ☒ Face-to-Face | Interviewer's Signature                    Date | 7100 W. Addison Street |
| ☐ Mail | X Tania Geryek  2/2/07 | Chicago, IL  60634 |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | 773-205-2323 | |

# SCHEDULE OF REAL ESTATE OWNED

This schedule of real estate owned is to be attached to and made a part of my Loan Application and Financial Statement dated 11/1/06 , for property at 3816 JOHNSON AVENUE, WESTERN SPRINGS, IL 60558

APPLICANT(S): STEFAN JAKUBIK

| Property Address | * | Original Loan Amount | Name & Address of Lender | Loan Number | Pay off? | Current Balance | Market Value | Gross Rent | Mortgage Payment | Taxes & Insurance | Net Rental Income / Loss |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3816 JOHNSON AVENUE WESTERN SPRINGS, IL 60558 | PR | | AURORA LOAN | 3640030891311 | Y | 289,086.19 | | | | | |
| | | | COUNTRYWIDE + CONSTRUCTION | 9371 | Y | $95,048.00 $1,100,000.00 | | | 1,458.00 (589) | | |
| 3249 PRIMROSE | R | | HSBC MORTGAGE CORP USA | 5477879143 | N | 104488 | 180000 | 1200 75% | 707 | 150 | 43.00 |
| 6451 N. KIMBALL AVENUE | | | AMERICAN HOME MORTGAGE | | N | 279927 | 630000 | 100% | 1223 | | 192 |
| | | | NATIONAL CITY | | N | 1450000 | | | 1216 | | |
| | | | | | | | | | | | |
| | | | | | Totals: | 1124463 | 1160000 | 1200 | 5193 | 450 | 43.00 |

* INDICATE:
"S" IF SOLD;
"PS" IF PENDING SALE;
"R" IF RENTAL PROPERTY BEING HELD FOR INCOME;
"PR" IF PRIMARY RESIDENCE.

Signature

Signature

4704246801

# Exhibit B – Note

# NOTE

| | | |
|---|---|---|
| **February 2, 2007** | **Hoffman Estates** | **IL** |
| Date | City | State |

**3816 Johnson Avenue, Western Springs, IL 60558**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **880,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Webster Bank, National Association.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **9.1250** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **April 1, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges describedbelow that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
**Webster Plaza, 145 Bank Street, Waterbury, CT 06702**
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **7,159.97** .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**MULTISTATE FIXED RATE NOTE** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument   Form 3200 1/01
Page 1 of 3                                                    4704246801                                    Initials: _____

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property, or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____(Seal)
STEFAN JAKUBIK                                        -(Borrower)

_____(Seal)
                                                     -(Borrower)

_____(Seal)
                                                     -(Borrower)

_____(Seal)
                                                     -(Borrower)

*(Sign Original Only)*

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument          Form 3200  1/01
Page 3 of 3                                          4704246801                                   Initials: ____

Exhibit C – Rider

# CONSTRUCTION RIDER TO NOTE AND SECURITY INSTRUMENT

**THIS RIDER** is an agreement to modify the terms of my loan to provide for a period of time during which future advances will be made to pay for the construction of improvements upon the Property.

LENDER - As used herein the term Lender shall mean

## WEBSTER BANK, NATIONAL ASSOCIATION

or any assignee, transferee or successor in interest thereto. As used herein the words "I", "me" or "my" shall mean any person who signs below as Borrower.

This Rider changes the terms of the promissory Note and Security Instrument (Mortgage, Deed of Trust or Security Deed) which I have signed which are dated    **February 2, 2007**    in regard to the property located at

### 3816 Johnson Avenue, Western Springs, IL 60558

("Property"). I agree that the covenants, terms and provisions set forth in this Rider will amend, supercede and replace any inconsistent terms, covenants or provisions in the promissory Note and Security Instrument, where the two are different.

**A. CONSTRUCTION LOAN - FUTURE ADVANCES.** THE ADDITION OF THIS RIDER TO THE NOTE AND MORTGAGE IS INTENDED AND AGREED TO MAKE THIS A CONSTRUCTION LOAN SECURED BY A CONSTRUCTION MORTGAGE WITHIN THE MEANING OF THE LAWS OF ILLINOIS (INCLUDING WITHOUT LIMITATION §9-313 OF THE ILLINOIS UNIFORM COMMERCIAL CODE). THE MORTGAGE SHALL SECURE FUTURE CONSTRUCTION LOAN ADVANCES FOR THE CONSTRUCTION OF IMPROVEMENTS ON THE PROPERTY, AS WELL AS ALL SUCH ADDITIONAL SUMS AND AMOUNTS AS ARE SET FORTH IN THE CONSTRUCTION LOAN AGREEMENT, NOTE AND LOAN DOCUMENTS. ALL SUMS ADVANCED HEREUNDER SHALL BE DEEMED TO HAVE BEEN MADE BY THE LENDER UNDER AN OBLIGATION TO DO SO, AND SHALL HAVE THE SAME PRIORITY AS THE ORIGINAL INDEBTEDNESS.

**B. BORROWER'S WAIVERS IN CASE OF DEFAULT .** IN THE EVENT OF A DEFAULT, BORROWER HEREBY WAIVES ALL RIGHTS OF RE-INSTATEMENT, REDEMPTION, APPRAISEMENT, VALUATION, STAY AND EXTENSION TO THE FULLEST EXTENT THAT SUCH RIGHTS MAY BE WAIVED UNDER THE LAWS OF ILLINOIS, (INCLUDING WITHOUT LIMITATION THE ILLINOIS MORTGAGE FORECLOSURE ACT.

**C. RECEIVER - MORTGAGEE IN POSSESSION.** IN THE EVENT OF A DEFAULT, IN ADDTION TO LENDER'S OTHER RIGHT AND REMEDIES, LENDER SHALL BE ENTITLED TO (A) THE APPOINTMENT OF A RECEIVER UNDER AUTHORITY OF THE COURT, WITH FULL LEGAL RIGHTS AND POWERS TO COMPLETE THE CONSTRUCTION OF IMPROVEMENTS, AND TO PRESERVE AND PROTECT THE PROPERTY; AND/OR (B) TO BE APPOINTED BY THE COURT AS "MORTGAGEE IN POSSESSION" WITH FULL LEGAL POWERS, RIGHTS AND PRIVELEGES PERMITTED UNDER LAW.

## 1. PROJECT COMPLETION DATE

The loan is to be disbursed in installments to finance construction, which I promise to complete on or before    **January 28, 2008**    , referred to as the **"PROJECT COMPLETION DATE"**, in strict compliance with the project Plans and Specifications which have been provided to Lender.

---

**EZ ONE™ - ILLINOIS** Fixed Rate Construction Rider To Note And Security Instrument
© Interstate Closing Systems, All Rights Reserved    Page 1    4704246801    XLLpb

If, the Lender determines that the construction of the project or completion of all of Borrower's obligations regarding the documentation thereof will not be completed by **January 28, 2008**, it shall be a sufficient basis for a default, and Lender shall have the right to stop making disbursements of money even before **January 28, 2008**. In such circumstances, in addition to all of Lender's other rights and remedies, Lender shall have the right to accelerate the loan and make all sums outstanding due and payable at once, together with interest, fees, costs of collection and all other charges, including reasonable attorneys' fees. It is expressly agreed that "TIME IS OF THE ESSENCE" with respect to the full completion of construction and of all obligations regarding the documentation thereof.

## 2. WORK IN PLACE

The Lender has agreed to make the loan herein described to be paid in installments as the work is completed and to disburse funds only FOR WORK IN PLACE, based upon inspection.

The Lender is obligated to advance the full amount of the loan $ **880,000.00** provided that I have fully performed and met all of the conditions and requirements which I have promised to undertake in the Construction Loan Agreement, Promissory Note, Security Agreement, Commitment Letter and Loan Documents; and provided that the loan is not in default.

## 3. INSPECTION FOR STATUS OF COMPLETION ONLY

The Lender shall inspect the project in order to ascertain the status of completion and the progress of the construction of improvements. The sole purpose for Lender's inspection is to determine the approximate amount and value of the work which has been done, so that Lender may disburse funds for such work in place. Such inspections shall not require a review by Lender of the quality of the construction. As **Borrower, I will not rely on the Lender's inspection for any purpose whatsoever**. Rather, I will be solely responsible for the progress and quality of construction, and the discovery of all delays, defects, faults, imperfections and deviations from the Plans and Specifications shall be my sole responsibility as Borrower.

## 4. AMENDMENT OF THE OBLIGATION TO REPAY LOAN

1. Because construction disbursements will be made at times and in amounts which cannot be accurately predicted between the date of this Rider and the Project Completion Date which is **January 28, 2008**, I will not begin to repay my loan as provided under the terms of Paragraph 3 of the Note that I signed.

2. Instead, I will pay interest only until **February 1, 2008** referred to as the "CONVERSION DATE". This is the day my last "interest-only" payment will be due.

3. The terms of Paragraph 3 of the Note, are hereby amended to provide that I will make my first payment of principal and interest on **March 1, 2008**, in the amount of $**7,203.79**, unless I am advised otherwise by the Lender in writing.

## 5. CONSTRUCTION PERIOD INTEREST

During the Construction Interest Period, I will pay the Lender interest on the principal amount that it has disbursed under the loan. Interest will be computed daily at the rate in effect under the Note, on the basis of a 365 day year, for the actual amount of principal outstanding. This interest will be billed to me on the 1st day of each month during the Construction Interest Period until the Conversion Date, and it will be my responsibility to pay the amount of interest billed to me within 15 days. Non-payment of interest by the 15th day of the month will be a default under the Note and will entitle the Lender to all remedies contained in the Note or the Security Instrument.

## 6. DELAYS IN THE COMPLETION OF CONSTRUCTION OR PERFORMANCE

If the construction of all planned improvements or repairs, and the performance of all of my obligations regarding the documentation thereof is not completed by **January 28, 2008**, then in addition to all of its other rights under the loan documents, the Lender, at its option, has the right to do any or all of the following:

**A. DEFAULT** - declare a default and exercise all of its rights reserved in the loan documents to act in case of default; or

**B. CONSTRUCTION PERIOD EXTENSION** - agree that Lender will extend the time for construction through modification of the loan documents, (Construction Period Extension) provided that Borrower co-operates fully in the execution thereof and pays the costs, fees and expenses associated with such extension, including Project Delay Surcharges, extension fees, document preparation fees, courier fees, recording fees, title insurance costs, and all other costs incurred or required to complete the extension; or

**C. DELAYED COMPLETION RESERVE ACCOUNT** - agree to allow more time for construction to be completed and to disburse any remaining loan funds into a Delayed Completion Reserve Account on which interest shall then become due and payable at the Note Rate, as though the funds had been fully advanced for construction completion; provided (1) that Borrower co-operates fully in the execution of documents establishing the same as required by Lender, and pays the costs, fees and expenses associated with the establishment of such Delayed Completion Reserve Account, including Project Delay Surcharges, extension fees, document preparation fees, courier fees, recording fees, title insurance costs, and all other costs incurred or required to complete the establishment of such account; and provided (2) that Borrower shall be required to begin repaying principal and interest under the loan documents as though construction had been completed and as though all funds were disbursed by the Project Completion Date; and provided (3) the unexpended loan funds will be held in a Delayed Completion Reserve Account until the construction is completed per the plans and specifications, and until all of the conditions necessary to complete the conversion of the loan to the Amortization Period have been completed.

**D. NO OBLIGATION TO EXTEND** - Lender shall have no obligation to permit more time for construction or the full performance of Borrower's obligations. The time selected by Borrower for the completion of the project is Borrower's responsibility, and failure to fully complete all construction and meet all required conditions within the time chosen by Borrower can be a default. Any extension of time for performance that is agreed to by Lender shall be at Lender's sole discretion.

## 7. NOTICE TO LENDER OF CLAIMS AND LIENS.

Any person wishing to claim the benefit of any Mechanics Lien is advised by the recording hereof that the address of the Lender for receipt of any **Contractor's Sworn Statement Of Account, Claim For Mechanics Lien, Notice to Owner**, or other mechanics lien claim under Illinois law, or for any other notice, claim or lien is shown below. Any such notice should be delivered to such address by certified mail return receipt requested.

**Attn: Robert M. Imperato, Vice President**
**Webster Bank, N.A.**
**Construction Lending Center**
**609 West Johnson Avenue**
**Cheshire, CT  06410**

As Borrower, I promise to notify the Lender, immediately upon my receipt of any such Contractor's Sworn Statement Of Account, Claim For Mechanics Lien, Notice to Owner, or any other notice, claim or lien relating in any way to the Property and to provide copies to Lender of all documents, demands or claims received by me regarding the same.

## 8. EXTINGUISHMENT AND SURVIVAL.

Unless otherwise extended in writing, on **January 28, 2008**, the provisions of this Rider, except paragraph 4 and this paragraph, shall self-extinguish and be of no further force and effect, provided however, that any causes of action, claims or rights of the Lender which accrue before said date shall continue unaffected and undiminished by such extinguishment.

BY SIGNING BELOW, on this day Borrower accepts and agrees to the terms and covenants contained in this Rider.

Date: _2 . 2 , 2007 ._          Borrower: __STEFAN JAKUBIK__

Borrower: _____          Borrower: _____

Borrower: _____          Borrower: _____

The undersigned witnessed the signature of the Borrower(s) at the time this Rider was signed .

_____          _2 . 2 . 2007 ._
Settlement Agent                    Date